Filed 8/15/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 153

State of North Dakota, Plaintiff and Appellant

v.

Kevin James Gefroh, Defendant and Appellee

No. 20100391

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Douglas L. Mattson, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Mark A. Flagstad (argued), Assistant State’s Attorney, Courthouse, 315 3rd Street SE, P.O. Box 5005, Minot, ND 58701-5005, for plaintiff and appellant.

Robert W. Martin (argued), North Dakota Public Defenders’ Office, 11 1st Avenue SW, Minot, ND 58701, for defendant and appellee.

State v. Gefroh

No. 20100391

Kapsner, Justice.

[¶1] The State appeals the district court order granting Kevin James Gefroh’s motion to suppress evidence.  The State argued law enforcement officers had probable cause to search for contraband, and because of the automobile exception to the warrant requirement, a warrant was not required to search Gefroh’s person.  We affirm the order suppressing the evidence found on Gefroh’s person.

I

[¶2] The Ward County Narcotics Task Force had information suggesting Gefroh received a shipment of controlled substances and had been selling controlled substances.  After receiving this information, Officer Craig Sandusky saw Gefroh leave a bar with two women and noticed Gefroh had three different registration tabs displayed on his license plate.  Officer Sandusky called Officer David Chapman’s police canine unit to follow Gefroh.  Officer Chapman followed Gefroh’s vehicle and observed the different registration tabs and saw Gefroh make an illegal left turn.  Gefroh was stopped for the traffic violations.  Officer Chapman had a drug-sniffing dog walk around the vehicle during the traffic stop, while Gefroh was still sitting in his vehicle, and the drug-sniffing dog indicated the presence of controlled substances at the passenger-side door of the vehicle.  Gefroh made furtive movements toward his jacket pockets while sitting in his vehicle.  Gefroh was asked to step out of his vehicle, and he complied.  Law enforcement officers searched Gefroh’s vehicle and found a plastic bag with what appeared to be marijuana residue, but they did not arrest him at this point.  According to Officer Trevor Huber, Gefroh stared at Officer Huber and put his hand by the right side of his body and made furtive movements.  Officer Huber performed a pat-down search on Gefroh and discovered four bundles of white powder that tested positive for cocaine.  Gefroh was arrested after the officers discovered the cocaine.

[¶3] Gefroh was charged with unlawful possession of cocaine with intent to deliver.  Gefroh made a motion to suppress his statements and all physical evidence obtained by law enforcement during the stop, arguing he was illegally seized and searched.  At the suppression hearing, the State asked, “And did you search Mr. Gefroh and the truck because the dog alerted on him?”  Officer Sandusky replied, “I believe Officer Huber searched Gefroh because of his actions during the stop, and once he was out of the vehicle.  And yes the vehicle was searched, as well.”  The district court ordered the cocaine found in Gefroh’s pocket suppressed because the automobile exception to the warrant requirement did not justify the warrantless search of Gefroh’s person, and the officers exceeded the scope of a proper pat-down search for weapons.  On appeal, the State argued the automobile exception allowed the search of Gefroh’s person.

II

[¶4] The district court concluded the pat-down search of Gefroh conducted by Officer Huber was initially justified out of concern for the safety of the police officers.  “A law enforcement officer may conduct a frisk or a pat-down search of a person only when the officer has a reasonable and articulable suspicion that the individual is armed and dangerous.”  
State v. Beane
, 2009 ND 146, ¶ 9, 770 N.W.2d 283 (quoting 
State v. Harlan
, 2008 ND 220, ¶ 6, 758 N.W.2d 706); 
see also
 
Terry v. Ohio
, 392 U.S. 1, 30 (1968).  Officer Huber testified Gefroh made several “furtive gestures” while seated in his vehicle.  After leaving his vehicle, Gefroh continued to reach for his jacket pocket several times and refused to keep his hands on the tailgate of his vehicle as instructed by Officer Huber.

[¶5] During the pat-down search, Officer Huber discovered a “soft object” in Gefroh’s pockets, which was later determined to be bundles of cocaine.  Citing 
Harlan
, the district court noted that the scope of a pat-down search is limited and concluded the search of the contents of Gefroh’s pocket was not justified.  2008 ND 220, ¶ 6, 758 N.W.2d 706 (“The scope of a constitutionally valid pat-down search is limited to the patting of a suspect’s outer clothing for such concealed objects that might be used as weapons. . . .  A pocket search is justified when the patting ‘reveals the presence of an object of a size and density that reasonably suggests the object might be a weapon.’”).  The district court found there was no testimony indicating Officer Huber believed the soft object could be a weapon, and concluded Officer Huber lacked a reasonable and articulable suspicion Gefroh’s pocket contained a weapon.

[¶6] The State did not argue the district court erred in its decision that the search of Gefroh’s pocket was not justified by the pat-down search.  The State argued the district court’s error was in deciding the automobile exception to the warrant requirement did not apply, and “[the district court] then further turned a search of the defendant based on probable cause into a ‘Terry’ pat down search for weapons based on the officers other concerns.”  At oral argument before this Court, the State’s attorney was asked if he would agree with the district court if the search had simply been a pat-down search.  The State’s attorney said, “I absolutely would, but I don’t believe that’s what it was.”  Later, the State’s attorney was asked if another exception to the warrant requirement applied, and the State’s attorney responded, “No, it was a search based on probable cause and the automobile exception.”  The State did not appeal the issue of the district court’s decision on the scope of the pat-down search for weapons and the subsequent search of Gefroh’s pocket, and we will not address the issue.  
See
 
State v. Duchene
, 2007 ND 31, ¶ 10, 727 N.W.2d 769 (“Issues not briefed by an appellant are deemed abandoned, and thereby become the law of the case and will not be considered on appeal.”).

III

[¶7] The State argued the district court erred in suppressing the cocaine evidence because the search of Gefroh’s person was within the automobile exception to the warrant requirement.  The State argued the exception applied because Gefroh, the driver of the stopped vehicle, was still in the vehicle when law enforcement officers established probable cause controlled substances were present.  This Court will not reverse a district court decision on a motion to suppress on appeal if there is sufficient competent evidence capable of supporting the court’s findings, and if the decision is not contrary to the manifest weight of the evidence.  
State v. Johnson
, 2011 ND 48, ¶ 9, 795 N.W.2d 367.  Whether a finding of fact meets a legal standard is a question of law, and questions of law are fully reviewable on appeal.  
Id.

[¶8] “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .”  U.S. Const. amend. IV.  Under the Fourth Amendment, the government must obtain a warrant before conducting a search when a person has a reasonable expectation of privacy, unless the search falls within a recognized exception to the warrant requirement.  
State v. Dudley
, 2010 ND 39, ¶ 7, 779 N.W.2d 369 (citing 
State v. Gregg
, 2000 ND 154, ¶ 23, 615 N.W.2d 515).  A recognized exception to the requirement is the automobile exception, which allows law enforcement officers to search a vehicle for illegal contraband without a warrant upon establishing probable cause the vehicle contains contraband.  
Id.
 (citing 
State v. Zwicke
, 2009 ND 129, ¶ 9, 767 N.W.2d 869).

Under the automobile exception, law enforcement officers may search for illegal contraband without a warrant when probable cause exists.  Probable cause exists to search a vehicle if it is established that “certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place.”  If a warrantless search of an automobile is made with probable cause, based on a reasonable belief arising out of the circumstances known to the officer that the automobile contains articles which are subject to seizure, the search is valid.

Id.
 (quoting 
Zwicke
, at ¶ 9) (quotations and citations omitted).  Once probable cause that a vehicle contains contraband is established, officers may search the vehicle because the ready mobility of the vehicle is an exigent circumstance justifying the exception to the warrant requirement.  
Zwicke
, at ¶ 11.

[¶9] The State argued law enforcement officers had probable cause to search Gefroh and his vehicle because the drug-sniffing dog indicated the presence of a controlled substance.  Allowing a drug-sniffing dog to sniff a vehicle is not a search within the meaning of the Fourth Amendment.  
State v. Ressler
, 2005 ND 140, ¶ 21, 701 N.W.2d 915 (citing 
United States v. Place
, 462 U.S. 696, 707 (1983)).  A drug-

sniffing dog indicating the presence of a controlled substance establishes probable cause.  
Id.
 (citing 
United States v. Lingenfelter
, 997 F.2d 632, 639 (9th Cir. 1993)).  The drug-sniffing dog indicated the presence of a controlled substance on the passenger-side door of the vehicle, which provided the law enforcement officers with probable cause the vehicle contained contraband.  The automobile exception to the warrant requirement and probable cause the vehicle contained a controlled substance allowed officers to search the vehicle.

[¶10] Gefroh argued the automobile exception to the warrant requirement justified only the search of the vehicle, but did not justify the search of his person without a warrant.  The State argued the officers could properly search Gefroh because every part of a vehicle and its contents that may conceal the object of the search may be searched.  
See
 
Wyoming v. Houghton
, 526 U.S. 295, 301 (1999) (citing 
United States v. Ross
, 456 U.S. 798, 825 (1982)).  The State contended Gefroh and his pockets were containers within the vehicle, because he was sitting in the vehicle when probable cause was established.

[¶11] In 
United States v. Di Re
, the United States Supreme Court found no grounds to expand the automobile exception to justify the arrest and search of the person within a car.  332 U.S. 581, 587 (1948).  It had been argued the automobile exception should justify the warrantless search of a person in cases where the object of the search could easily be concealed on a person.  
Id.
 at 586.  The government recognized that persons may not be searched just because they are on premises subject to a search warrant.  
Id.
 at 587.  The Court compared that situation to one where a vehicle is subject to a search warrant, which would not allow the search of a person, and decided it was not rational that a warrantless search of a vehicle would be greater in scope than a search pursuant to a warrant.  
Id.
  The Court stated, “We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled.”  
Id.

[¶12] The Supreme Court in 
Houghton
 recognized the “heightened protection afforded against searches of one’s person,” and reiterated that case law supported a distinction between the person and a container within a vehicle.  526 U.S. at 303 (citing 
Di Re
, 332 U.S. 581 (1948); 
Ybarra v. Illinois
, 444 U.S. 85 (1979)).  The issue in 
Houghton
 was whether passengers’ property may be searched during a vehicle search, and the Court held  passengers’ property may be searched the same as the driver’s property.  
Id.
 at 307.  The Court stated case law did not support a distinction between the possessions of a driver and passenger, but did support a distinction between the person and a container within a vehicle.  
Id.
 at 303.  The Court said, “Even a limited search of the outer clothing . . . constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience.”  
Id.
 (quoting 
Terry v. Ohio
, 392 U.S. 1, 24-25 (1968)).

[¶13] We hold the automobile exception did not justify the warrantless search of Gefroh’s person.  The dog-sniff of the vehicle established probable cause the vehicle contained a controlled substance, but the pockets of the clothes Gefroh was wearing were not “containers.”  The State also argued that Gefroh, as the driver of the vehicle, was part of the contents of the vehicle.  The State offers no support for its arguments that would render Gefroh a container or contents of the vehicle, rather than a person entitled to “heightened protection” against searches of his person.  The district court correctly decided the automobile exception justified the search of the vehicle, but not Gefroh’s person.  The district court correctly ordered the cocaine evidence suppressed.

IV

[¶14] The automobile exception to the warrant requirement did not justify the warrantless search of Gefroh’s person.  The State did not offer another justification for the search.  We affirm the district court order suppressing the evidence resulting from the search of Gefroh’s person.

[¶15] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

VandeWalle, Chief Justice, concurring specially.

[¶16] I concur in the result reached by the majority opinion.  Nevertheless, I agree with Justice Sandstrom’s dissent that the remaining objective question “is whether the officer had probable cause to proceed further” with the search even though the trial court found that a further pocket search “was not justified” by concerns for officer safety.  The question becomes whether or not, knowing what the officer knew about Gefroh’s drug transactions and the dog sniff, the officer could continue the search because he had probable cause to believe the soft object he felt in Gefroh’s pocket was contraband.  However, I cannot determine from this record that the State argued this matter to the trial court or that the trial court decided this question.  Rather, the issue before the trial court and before this Court on appeal, focused on justifying the continued search under the automobile exception.  Because I believe the remaining objective question is a question that should be answered by the trial court in the first instance and briefed and argued to this Court on appeal, I concur with the majority opinion.

[¶17] Gerald W. VandeWalle, C.J.

Sandstrom, Justice, dissenting.

[¶18] I respectfully dissent, because the district court made important findings that properly result in the evidence not being suppressed.

[¶19] The majority correctly notes that the officer made a good traffic stop of the vehicle.  The drug dog “alerted on” the vehicle with Gefroh in it, reflecting the presence of drugs.

[¶20] The district court made these important findings:

During the course of the investigatory stop, while still in the vehicle, Officer Huber noticed Gefroh making furtive movements.  Officer Huber asked Gefroh if he could search his person.  Gefroh did not respond.  Because of the furtive movements coupled with Saber alerting on the pickup, Officer Huber told Gefroh to place his hands on the pickup’s tailgate.  On at least two occasions, Gefroh removed his right hand from the tailgate and reached for his right hand jacket pocket.  Officer Huber told Gefroh to keep his hands on the tailgate.  Concerned for the Task Force officers’ safety, Officer Huber performed a pat-down search of Gefroh’s person and felt a “soft object” in his right jacket pocket.

Based on the pat-down search, Officer Huber reached into Gefroh’s jacket pocket and discovered two plastic bags containing white powder.  Later testing by the North Dakota Crime Laboratory confirmed that the white substance in the plastic bags was cocaine.

[¶21] The district court found the officer’s pat-down search of Gefroh for weapons was justified.

[¶22] On appeal, the State identifies the issue as “whether the district court erred in granting the defendant’s motion to suppress evidence.”

[¶23] On the basis of the drug dog alert, there was probable cause to believe there were drugs present in a very finite universe that included Gefroh’s person.  During a proper pat-down search for weapons, when the officer found a soft object in Gefroh’s pocket, he had probable cause to believe the object was drugs and was entitled to remove it.  “If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons . . . .”  
Minnesota v. Dickerson
, 508 U.S. 366, 375 (1993).  The officer’s reasonable suspicion, based on the totality of the circumstances preceding the pat-down, including Gefroh’s actions and the drug dog alert, made it apparent the object was drugs.

[¶24] The district court said:

The only witness called to testify was Officer Sandusky.  At no point during his testimony was Officer Sandusky able to point to any reasonable and articulable suspicion that the “soft object” Officer Huber felt in Gefroh’s pocket led him to believe that Gefroh was carrying a weapon or presented a potential threat to the officers’ safety.

[¶25] The standard of review, however, is an objective one, not a subjective one.  
Whren v. United States
, 517 U.S. 806, 813 (1996).  As we explained in 
Zimmerman v. N.D. Dep’t of Transp.
, 543 N.W.2d 479, 482-83 (N.D. 1996), the officer’s subjective basis for action does not vitiate objective reasonable suspicion or probable cause.  In 
Zimmerman
 the officer testified he made a stop because he was directed to do so by another officer (which may not have provided a valid basis for a stop), but the stop was still valid because the officer had witnessed the driver committing a moving violation (which provided a valid basis for the stop).  Although before 
Whren
, Chief Justice VandeWalle wrote similarly for the Court in 
State v. Smith
, 452 N.W.2d 86 (N.D. 1990).

[¶26] The objective question is whether the officer had probable cause to proceed further.  Unlike as in the typical pat-down search, the objective facts here gave the officer probable cause to believe the soft object legitimately discovered was drugs before he removed it from Gefroh’s pocket.

[¶27] Under nearly identical circumstances—a drug dog alerting on the vehicle and an object that could be drugs found on the defendant during a weapons pat-down search—and the “plain feel doctrine,” other courts have upheld the action of officers.  
See, e.g.
, 
State v. Burns
, 698 So.2d 1282 (Fla. Dist. Ct. App. 1997); 
Wilson v. State
, 822 A.2d 1247 (Md. Ct. Spec. App. 2003).

[¶28] As Judge Kermit Edward Bye has outlined for the Eighth Circuit, the “plain touch” or “plain feel” doctrine is well recognized by the United States Supreme Court:

To take issue with the officers’ conduct, rather, one must turn back to the discovery and seizure of the cash itself.  During a 
Terry
 stop, “[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,” the officer may conduct a pat-down search “to determine whether the person is in fact carrying a weapon.”  
Terry [v. Ohio]
, 392 U.S. [1,] 24, 88 S. Ct. 1868 [(1968)].  Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction.  
United States v. Robinson
, 119 F.3d 663, 667 (8th Cir. 1997).  In this case, not only did the officers suspect the defendants had been involved in a drug transaction, the officers also had to confront three unknown men in the early evening in a place known for its drug activity.  After considering the totality of these circumstances, we conclude the decision to conduct the pat-down search was proper under the Fourth Amendment.  This conclusion, however, does not end the inquiry.

Rather, the issue narrows to whether Sergeant Pavlak, the officer who conducted the search, was justified in 
seizing
 the cash in Mr. Alfaro’s pockets.  While the “purpose of a pat-down search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence,” and while the search must therefore “be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby,” 
Minnesota v. Dickerson
, 508 U.S. 366, 373, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993) (internal citations and quotations omitted), officers may lawfully seize contraband they incidentally discover in “plain touch” during a 
Terry
 frisk.

In 
Dickerson
, the Supreme Court established the “plain touch” or “plain feel” concept as an analogue to the plain-view doctrine.  
Id.
 at 375-76, 113 S. Ct. 2130.  It is settled that an officer, without a warrant, may seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object’s incriminating character is immediately apparent, and the officer has a lawful right to access the object.  
Id.
 at 375, 113 S. Ct. 2130.  The plain-view doctrine “has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search.”  
Id.
  The Court described this analogy as follows:

If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; if the object is 
contraband
, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

Id.
 at 375-76, 113 S. Ct. 2130 (emphasis added).

While 
Dickerson
’s holding refers specifically to contraband, we do not doubt the plain-touch doctrine extends to the lawful discovery of any incriminating evidence, not just contraband such as drugs.  See 
United States v. Hernandez-Rivas
, 348 F.3d 595, 599 (7th Cir. 2003) (tacitly recognizing plain-touch doctrine would justify seizure of $10,000 in cash); 
United States v. Miles
, 247 F.3d 1009, 1013 (9th Cir. 2001) (“[I]f an officer feels an item that he recognizes as contraband or 
evidence
, that touch may provide probable cause for the arrest of the person and seizure of the 
evidence
.” (emphasis added)).  Indeed, in the footnote that follows the 
Dickerson
 block quotation we have just cited, the Court explains “[t]he police officer in each case [plain view or plain touch] would have had a prior justification for an intrusion in the course of which he came inadvertently across a 
piece of evidence
 incriminating the accused.”  
Id.
 at 376 n.3, 113 S. Ct. 2130 (emphasis added).

United States v. Bustos-Torres
, 396 F.3d 935, 943-44 (8th Cir. 2005) (footnote omitted).

[¶29] So, the test is properly an objective one.  At the time the officer removed the object from the defendant’s pocket, there was probable cause to believe it was drugs.  Applying the objective standard in this case, the district court should not have suppressed.  The majority asserts that the State, in essence, incorrectly relied on the automobile exception and that therefore the incorrect ruling of the district court should be affirmed.  This is at best an overly restrictive reading of the State’s position.  As noted above, the State’s issue on appeal is “whether the district court erred in granting the defendant’s motion to suppress evidence.”  The State argues that at the time the officer removed the object from the defendant’s pocket, he had probable cause:

The more common sense approach is what happened in this case.  Task force officers after establishing probable cause with the canine alert and after observing the furtive movements of the defendant while he was in the vehicle prior to establishing probable cause asked him to step out and place his hands on the tailgate so they could search the vehicle.  At that point he kept reaching for his pockets, after which, he was subsequently searched and the cocaine that is the subject of this case was found in his jacket pocket.  The fact that he was outside the vehicle, under the facts of this case as opposed to [
State v.] Haibeck
[, 2004 ND 163, 685 N.W.2d 512] justifies the search done by the officers even though they indicated that they were also concerned about weapons.

“The question of whether the facts found by the trial court meet a legal standard . . . is a question of law which is fully reviewable.”  
State v. Steinmetz
, 552 N.W.2d 358, 360 (N.D. 1996).  There was probable cause to remove the drugs from the defendant’s pocket.

[¶30] I would reverse.

[¶31] Dale V. Sandstrom